FILED - GR
June 11, 2009 3:38 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ___rmw___/___

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Colleen Packard,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Check & Credit Recovery, Inc.,<br>a New York corporation,<br><br>　　　　Defendant. | **1:09-cv-547**<br><br>Hon. **Janet T. Neff**<br>**U.S. District Judge** |

**Complaint**

### I.  Introduction

1. This is an action for damages, declaratory and injunctive relief, brought by a consumer against a debt collector in response to the debt collector's use of extortion and other unlawful practices that violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and Michigan Collection Practices Act ("MCPA"), M.C.L. § 339.901 *et seq.*

### II.  Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. § 2201. Venue in this judicial district is proper because the pertinent events took place here.

### III.  Parties

3. Plaintiff Colleen Packard is a natural person residing in Kent County, Michigan. Ms. Packard is a "consumer" and "person" as the terms are defined and/or used in the FDCPA.

1

Ms. Packard is a "consumer," "debtor" and "person" as the terms are defined and/or used in the MCPA.

4. Defendant Check & Credit Recovery, Inc. ("CCR") is a New York corporation, doing business at 225 Great Arrow Avenue, Suite 4, Buffalo, New York 14207. CCR also maintains a private mail box at the UPS Store, 2316 Delaware Avenue, Box 270,. Buffalo, New York 14216. CCR also is associated with an address of 420 Franklin Street, buffalo, New York 14202, which address also is associated with a New York attorney named Albert A. Burruano. CCR uses various telephone numbers, including 866-590-0904, 716-332-1850 and 716-322-1851. These same telephone numbers previously were used by another debt collector named Check Administration Services, Inc., a New York corporation. CCR is a "debt collector" as the term is defined and used in the FDCPA. CCR is a "collection agency" as the term is defined and used in the MCPA.

**IV. Facts**

5. In or about December 15, 2006, Ms. Packard borrowed less than $300.00 from Allied Cash Advance Michigan Servicing LLC ("Allied"), a Delaware limited liability company. Allied also is (or has been) known as Allied Cash Advance Servicing Michigan LLC, Allied Cash Advance Michigan LLC, and Allied Cash Advance.

6. Allied makes "payday" loans, also known as "cash advances," "deferred deposits," or "check loans." Regardless of the name, the loans all work like this: The consumer provides the lender with a post-dated check written on the consumer's bank account for the amount of the loan plus a fee. At the time Ms. Packard borrowed money from Allied, this fee translated into annual percentage rate in excess of 300%. The check is then held for one to four

2

weeks (usually until the consumer's next payday) at which time the consumer redeems the check by paying the face amount, allows the check to be cashed, or pays another fee to extend the loan.

7. Ms. Packard borrowed the money to purchase goods and/or services for personal, family or household purposes. Any resulting debt was a "debt" as the term is defined and used in the FDCPA and MCPA.

8. Ms. Packard initiated the loan transaction by providing Allied with a post-dated check, No. 1904, written on her account at Bell Com Credit Union.

9. Ms. Packard disputes the debt.

10. Ms. Packard refuses to pay the debt.

11. Allied or a successor in interest hired CCR to collect the debt from Ms. Packard. Alternatively, CCR purchased the debt after the debt allegedly was in default.

12. In or about April 2009, a CCR employee identified as "Mrs. Harris" telephoned Ms. Packard's residence and spoke with Ms. Packard's daughter. The CCR employee stated:

   a) CCR was calling regarding Ms. Packard's account with Bell Com Credit Union;

   b) Criminal charges were pending against Ms. Packard;

   c) CCR was going to send a summons to Ms. Packard;

   d) Ms. Packard should telephone Mrs. Harris at 866-590-0904

13. A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer. 15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

14. The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

15. CCR wrongfully communicated to Ms. Packard's daughter that CCR is a debt collector and that CCR was attempting to collect a debt from Ms. Packard, violating 15 U.S.C. § 1692b.

16. CCR did not have Ms. Packard's prior and express permission to discuss the debt with Ms. Packard's daughter.

17. In or about April 2009, Ms. Packard spoke by telephone with a CCR employee identified as "Mrs. Harris." In the ensuing conversation, Mrs. Harris made the following statements:

   a) CCR was contacting Ms. Packard to collect a payday loan made by Allied to Ms. Packard on December 15, 2006.

   b) Criminal charges had been filed against Ms. Packard in Wyoming, Michigan on December 28, 2008.

   c) Ms. Packard had until April 19, 2009 to pay the debt and have the charges dropped.

   d) Mrs. Harris was calling to give Ms. Packard to pay the debt before CCR and/or Allied went back to court and the judge put Ms. Packard in jail.

   e) If Ms. Packard did not pay the debt, the case would be transferred to North Carolina.

   f) If Ms. Packard did not pay the debt, Mrs. Harris was going to notify Ms. Packard's employer that Ms. Packard had failed to pay the debt and had broken the law.

18. The statements by CCR to Ms. Packard that charges had been filed against Ms.

Packard, that CCR and/or Allied were going back to court, that a case had been filed against Ms. Packard, that the case would be transferred to North Carolina, were false.

19. The threat by CCR to contact Ms. Packard's employer was unlawful.

20. On or about May 4, 2009, a CCR employee identified as "Mrs. Harris" telephoned Ms. Packard's residence and spoke with Ms. Packard's daughter. The CCR employee asked to speak with Ms. Packard. Ms. Packard's daughter stated that Ms. Packard was at work. The CCR employee asked for Ms. Packard's work or cellular telephone number. Ms. Packard's daughter refused to provide the telephone numbers. Hearing that, the CCR employee stated:

    a) She was calling about Case No. 140959 which had been filed against Ms. Packard.

    b) Ms. Packard needed to telephone Mrs. Harris at 866-590-0904.

    c) "Two charges were pending against" Ms. Packard.

    d) Ms. Packard was going to be served at work with the charges.

21. The statements by CCR to Ms. Packard's daughter that a case had been filed against Ms. Packard, that two charges had been filed against Ms. Packard, and that Ms. Packard was going to be served at work with the charges, were false.

22. On or about May 5, 2009, Ms. Packard spoke by telephone with an unidentified female CCR employee. The CCR employee stated:

    a) Two charges had been filed against Ms. Packard in a Wyoming, Michigan court for "malicious intent to defraud a financial institution" and "theft of goods and services."

    b) Ms. Packard would be served with the charges at her place of employment.

    c)    An "order" had been "sent out" recommending legal action on this matter, and that Ms. Packard would be served by a county process server.

    d)    CCR was performing an employment verification of Ms. Packard.

    e)    CCR was performing an investigation of Ms. Packard's assets.

    f)    If Ms. Packard agreed to pay, then "a court release would be placed on the matter."

23.    Neither CCR nor Allied had any ability to cause Mr. Packard to be prosecuted for failure to pay a payday loan. Admittedly, Michigan law does make it a crime to make an insufficient funds check "with intent to defraud" and "knowing at the time of the making" that the maker does not have sufficient funds or credit available to cover the check when presented for payment. M.C.L. § 750.131. However, the Michigan Supreme Court has held that there is no intent to defraud under the statute when "the check is given by the maker and accepted by the payee with the latter's full knowledge that the maker does not then have either a deposit or credit at the bank which will result in payment of the check on presentation." *People v. Jacobson*, 248 Mich. 639, 642-43 (1929).

24.    CCR knew or should have known that when Allied accepted Ms. Packard's postdated check, Ms. Packard did not have sufficient funds or credit available in her account to cover the checks. Indeed, it was Ms. Packard's known lack of sufficient funds or credit which occasioned Ms. Packard to borrow money from Allied at an annual percentage rate of more than 300% in the first place.

25.    CCR also knew or should have known when it threatened Ms. Packard that the Grand Rapids Police Department does not prosecute makers of returned checks made in

connection with payday loans. The *Merchants' Guide to Bad Check Prosecution* published by the Grand Rapids Police Department and dated October 16, 2002 expressly states that the Department will *not* prosecute writers of "Post-dated or request to hold checks" or "Checks for payment on a loan, contract or installment payment" that are returned because of non-sufficient funds or because the account was closed.

26.     CCR also knew or should have known when it threatened Ms. Packard with prosecution that the Office of the Kent County Prosecutor as a matter of policy does not prosecute makers of returned checks made in connection with payday loans.

27.     Moreover, the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored." M.C.L. § 487.2158(4).

28.     M.C.L. § 750.213 states in pertinent part:

> Sec. 213. MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . . with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made. *People v. Maranian*, 359 Mich. 361 (1960).

29.     CCR and its employees attempted to extort money from Ms. Packard and violated M.C.L. § 750.213.

30.     It was a part of defendant's regular and routine practices and policy to falsely threaten consumers with prosecution in order to coerce payment of alleged debts.

31. It was a part of defendant's regular and routine practices and policy to make malicious threats to extort money.

32. CCR failed to send Ms. Packard a timely written notice as required by 15 U.S.C. § 1692g.

33. Defendant's methods, acts and practices were wilful. Defendant's violations of the FDCPA and MCPA were wilful.

34. As an actual and proximate result of defendant's outrageous and intentional acts and omissions, plaintiff has suffered actual damages and injury, including but not limited to, emotional stress, mental anguish and suffering for which she should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

35. Plaintiff incorporates the foregoing paragraphs by reference.

36. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

   a) Defendant violated 15 U.S.C. § 1692b;

   b) Defendant violated 15 U.S.C. § 1692c;

   c) Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

   d) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted

      collection of a debt;

e)     Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

f)     Defendant violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

d)     A declaration that defendant's practices violate the FDCPA; and

e)     Such further relief as the court deems just and proper.

### Count 2– Michigan Collection Practices Act
### (M.C.L. § 339.901 *et seq.*)

37.     Plaintiff incorporates the foregoing paragraphs by reference.

38.     Defendant has violated the MCPA. Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

a)     Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)     Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of the debtor's property; and

c)     Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure

designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Equitable relief, including declaratory and injunctive relief, pursuant to M.C.L. § 339.916(1);

b) Actual damages pursuant to M.C.L. § 339.916(1) and (2);

c) Treble the actual damages pursuant to M.C.L. § 339.916(2);

d) Statutory damages pursuant to M.C.L. § 339.916(2); and

e) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: June 11, 2009

*/s/ Phillip C. Rogers*
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com